AMIE TAN, In Pro Se
ALLEN TAN, In Pro Se
3 Dow Ct.
Alameda, CA 94501
Tel: 510-590-7106

FILED

MAR 29 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, N.A. as Trustee<br><br>Plaintiff,<br><br>v.<br><br>AMIE TAN, ALLEN TAN and DOES 1 through 100, inclusive<br><br>Defendants. | Case No.:<br><br>Notice of Removal: C12-00921-~~DMR~~ EMC<br><br>**CROSS COMPLAINT** FOR: |
| AMIE TAN and ALLEN TAN, individuals, on behalf of themselves and all others similarly situated.<br><br>Cross Defendants ~~Plaintiffs~~,<br><br>v.<br><br>OPTION ONE MORTGAGE CORPORATION, as the Original Lender; PREMIER TRUST DEED SERVICES, INC, as the Original Trustee; UNITED TITLE COMPANY Title Company; AURORA LOAN SERVICES LLC, as the PSA Master Servicer; LEHMAN BROTHERS HOLDINGS INC. PSA Sponsor and Seller; STRUCTURED ASSET SECURITIES CORPORATION, as PSA Depositor; WELLS FARGO BANK, N.A, as PSA Trustee; WELLS FARGO BANK, N.A. PSA Custodian; STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-OPT1, as the PSA Trust Issuing Entity; TD SERVICE CORP; as the Foreclosing Trustee; LINDA GREEN as Vice President of AHMSI, CRIS M IVEY as Notary of | 1. **LACK OF STANDING**<br>2. **DECEIT INTENTIONAL MISREPRESENTATION**<br>3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>4. **SLANDER OF TITLE**<br>5. **QUIET TITLE**<br>6. **DECLARATORY RELIEF**<br>7. **VIOLATIONS OF CALIFORNIA CIVIL CODE SECTION 2932.5**<br>8. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ**<br>9. **VIOLATION OF SECTION §726 CA. CODE OF CIV PROCEDURE**<br>10. **CIVIL RICO**<br><br>**Jury Trial Demanded** |

1

Assignment of Deed of Trust; KIM
FRENCH, as Vice President of AHMSI,
KATHY NANCY EVANS the Notary of the
Assignment of Deed of Trust; TONYA
HOPKINS as Signatory of Assignment of
deed of Trust, C Bates, as Notary of
Assignment of Deed of Trust and DOES 1
THROUGH 100, INCLUSIVE

Cross Defendants,

COMES NOW the Plaintiffs, AMIE TAN and ALLEN TAN ("Plaintiffs'), complaining of the Defendants, and each of them, as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1332, 1343, and42U.S.C. §1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law and matters between diverse citizens that involve an amount in controversy in excess of $75,000.00. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. §1367.

2.      The-unlawful conduct, illegal practices, and acts complained of and - alleged in this Complaint were all committed in the Federal District of California and the involved real property located in the Federal District of California. Therefore, venue properly lies in this District, pursuant to 12 U.S.C. §2614 and 28 U.S.C. §1391(b).

3.      Plaintiffs are ignorant of the true identity and capacity of defendants designated as Does 1-100, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial. Plaintiffs allege on information and belief, however, that each and every Doe Defendant is in some manner responsible for the acts, and conduct of the other defendants, and

were, and are responsible for the injuries, damages, and harm, incurred by Plaintiffs. Plaintiffs further allege on information and belief that each such designated defendant acted, and acts, as the authorized agent, representative, and associate of the other defendants in doing the things alleged herein. >

4.    Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

5.    Any allegation about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

6.    At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of the other.

7.    At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

## INTRODUCTION

1.    This is an action brought by Plaintiffs for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

2.    Plaintiffs, homeowners, dispute the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others

alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of trust related to the Property, and thus, do not have lawful ownership or a security interest in Plaintiffs' Home which is described in detail herein.

3. Plaintiffs allege that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

4. Plaintiffs further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected my claim of title or security interest in the Property. Defendants have perfected any claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

5. Plaintiffs allege that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them. Plaintiffs desire a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

6. Plaintiffs also seek redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

  a. An invalid and unperfected security interest in Plaintiffs' Home hereinafter described;

  b. Void "True Sale(s)" violating New York law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Plaintiffs; mortgage, which is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with

another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transaction (see further discussion of the PSA herein);

c. An incomplete and ineffectual perfection of a security interest in Plaintiffs' Home;

d. Violations of California Business and professions Code §17200 (Unfair Business Practices) and

e. A void or voidable Deed of Trust due to improper securitization, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

## THE PARTIES

7. Plaintiffs are now, and at all times relevant to this action, residents of the County of Alameda, State of California.

8. The Plaintiffs may bring in or consolidate with this case other persons who are similarly situated to Plaintiffs identified above. Further, at all times material hereto, any of the Defendants have acted in the same or in another capacity with respect to loan processing. All of the foregoing secured real estate loans made to Plaintiffs were wrongfully and handled and processed by Defendants, resulting in damages. From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional Plaintiffs, or will follow such other process as is prescribed by the Court. In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion and to add such parties to this action or follow such procedure as the Court in this case may specify. In the event Plaintiffs file a separate lawsuit appertaining to all or any of these persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases in accordance with

California law, or as otherwise directed by the Court.

9. Defendant OPTION ONE MORTGAGE CORPORATION, ("ORIGINAL LENDER") is doing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "ORIGINAL LENDER", is the Originator of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint. Plaintiffs are further informed and believe that the "ORIGINAL LENDER" is a participant in fraud on the Plaintiff in the origination of the note.

10. Defendant, UNITED TITLE COMPANY, as the "TITLE COMPANY" who oversee the recording and processing of both Deed of Trust and Promissory Note is doing business in Alameda, State of California. Plaintiffs are further informed and believe, thereon allege, that the Original Trustee and Title Company of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint. Plaintiffs are further informed and believe that the "TITLE COMPANY" is a participant in fraud on the Plaintiff in the origination of the note.

11. Defendant, PREMIER TRUST DEED SERVICES, INC, as the "ORIGINAL TRUSTEE" who oversee the recording and processing of both Deed of Trust and Promissory Note is doing business in Alameda, State of California. Plaintiffs are further informed and believe, thereon allege, that the Original Trustee and Title Company of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint. Plaintiffs are further informed and believe that the "ORIGINAL TRUSTEE" is a participant in fraud on the Plaintiff in the origination of the note.

12. Defendant, AMERICAN HOME MORTGAGE SERVICING, INC, as the "SUB SERVICER" who oversee the recording and processing of both Deed of Trust and Promissory Note is doing business in Alameda, State of California. Plaintiffs are further informed and believe, thereon allege, that the Original Trustee and Title Company of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint. Plaintiffs are further informed and believe that the "SUB SERVICER" is a participant in fraud on the Plaintiff in the origination of the note.

13. Defendant, LEHMAN BROTHERS HOLDINGS INC. ("PSA SPONSOR and SELLER"), is doing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "PSA SPONSOR and SELLER" is the present purported Securitization Seller of a portion of the mortgage loans. The remainder of the mortgage loans will be sold directly to the depositors by one or more special purpose entities that were established by "DEPOSITOR" which, in turn, acquired those mortgage loans directly from "ORIGINAL LENDER" herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

14. Defendant, AURORA LOAN SERVICES LLC ("PSA SERVICER"), is a National Banking Association, doing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "PSA SERVICER", is the present purported Master Servicer of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

15. Defendant, STRUCTURED ASSET SECURITIES CORPORATION ("DEPOSITOR"),

is dóing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "DEPOSITOR" is the present purported Securitization Depositor of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

16. Defendant, WELLS FARGO BANK, N.A ("TRUSTEE"), is a National Banking Association, doing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "TRUSTEE", is the present purported PSA Trustee and Custodian of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

17. Defendant, WELLS FARGO BANK, N.A. ("PSA CUSTODIAN"), is a National Banking Association, doing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "PSA CUSTODIAN", is the present purported PSA Trustee and Custodian of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

18. Defendant, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-OPT1 ("PSA ISSUING TRUST"), is doing business in the County of Alameda, State of California. Plaintiffs are further informed and believe, and thereon allege, that "PSA ISSUING TRUST", is the present purported PSA Issuing Trust of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

19. Defendant, TD SERVICE CORP ("FORECLOSING TRUSTEE"), Plaintiffs are informed and believe, and thereon allege, is a national financial services association and doing business in the County of Alameda, State of California and is the purported "FORECLOSING TRUSTEE" of the mortgage herein and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

20. Defendant, LINDA GREEN, as Executor of the recorded Assignment of Deed of Trust as Vice President of American Home Mortgage Servicing, Inc., suspected as Robo-Signor as per attached for herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

21. Defendant, CHRIS M. IVEY, as the Notary of the recorded Assignment of Deed of Trust suspected as Robo-Signer as per attached for herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

22. Defendant, KIM FRENCH, as Executor of the recorded Assignment of Deed of Trust as Assistant Secretary of Mortgage Electronic Registration Systems, Inc., suspected as Robo-Signor as per attached "Exhibit A-5" for herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

23. Defendant, KIM FRENCH, as the Notary of the recorded Assignment of Deed of Trust and Substitution of Trustee as Assistant Secretary of Mortgage Electronic Registration Systems, Inc., suspected as Robo-Signer as per attached "Exhibit A-5" for herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this

Complaintin this Complaint.

24. At all times relevant to this action, Plaintiffs have owned the Property located at 3 DOW CT., ALAMEDA, CA 94501 (THE "PROPERTY").

25. Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and therefore allege, that all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

26. Plaintiffs are informed and believe, and thereon allege, that's at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## FACTUAL ALLEGATIONS

27. Plaintiffs executed a series of documents, including but not limited to a Note and Deed of Trust, securing the Property in the amount of note. The original beneficiary and nominee under the Deed of Trust was "ORIGINAL LENDER".

28. Plaintiffs are informed and believe, and thereon allege, that this loan was securitized, with the Note not being properly transferred to Defendant, "PSA SERVICER", acting as the Servicer for the Securitized Trust. As set forth herein above, the Securitized Trust was formed by execution of the PSA.

29. Plaintiffs are informed and believe, and thereon allege, that the purchase mortgage on

the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the original lender and other Defendants, regarding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA of the entities making and receiving the purported assignments to this trust.

30. Plaintiffs allege that the PSA requires that each Note or Deed of trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

31. Plaintiffs further allege that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party. Documents filed with the SEC by the securitization participants allegedly claim that the Note and Deed of Trust at issue in this case were sold, transferred and securitized claim that the Note and Deed of Trust at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages with an aggregate principal balance of approximately $916,044,000, into "PSA ISSUING TRUST", which is a Common Law Trust formed pursuant to New York law. A copy of the Prospectus Supplement can be found at the site: http://www.sec.gov/Archives/edgar/data/1359859/000095011706001957/a41832.txt

32. Plaintiffs are informed and believe, and thereon allege, that the "PSA ISSUING TRUST" had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificated of investment as described in the Prospectus identified herein below. A

detailed description of the mortgage loans which form the Trust "PSA ISSUING TRUST" is included in Form 424B5 (the "Prospectus"), which has been duly filed with the SEC.

33. Plaintiffs also allege that the Note was secured by the Deed of Trust. Plaintiffs allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

34. Plaintiffs are informed and believe, that Defendant "PSA SERVICER" alleges that it is the "holder and owner" of the Note and the beneficiary of the Deed of Trust. However, the Note and Deed of Trust identify the mortgagee and note holder as the original lending institution or Mortgage Originator.

35. Plaintiffs further allege that no documents or records can be produced that demonstrate that prior to the closing date for "PSA ISSUING TRUST", the Note was duly endorsed, transferred and delivered to "PSA ISSUING TRUST", including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to "PSA ISSUING TRUST", including all intervening assignments.

36. Plaintiffs further allege that any documents that purport to transfer any interest in the Note to "PSA Issuing Trust" after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

37. The link to the SEC and the various documents filed with the SEC regarding the Note are:                                    SEC                                    Website: http://www.sec.gov/Archives/edgar/data/1359859/000116231806000655/exhibit41.htm

38. Plaintiffs are further informed and believe, and thereon allege, that the purported assignments and transfers of Plaintiffs' debt or obligation did not comply with New York law, and/or other laws and statutes, and thus, do not constitute valid and enforceable "True Sales." Any

security interest in the Property was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of Plaintiffs' Deed of Trust does not have the requisite title, perfected security interest or standing to proceed; and/or is not the real party in interest with regard to any action taken or to be taken against the Property.

39. Plaintiffs are also informed and believe, and thereon allege, that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

40. As set forth hereinabove, Defendants, and each of them, violated the express terms of the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement, is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document on file with the SEC. More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

41. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness" two "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

42. A "True Sale" of the loan would be a circumstance whereby one party owned the Note

and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be endorsed to the next party by the previous assignee of record.

43. In order for the Trustee of the Securitized Trust to have a valid and enforceable secured claim against Plaintiffs' Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

a. There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

b. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed. Absent such proof, Plaintiffs allege that the Trust cannot demonstrate that it had perfected its security interest in Plaintiffs' Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

44. Plaintiffs are informed and believe, and thereon allege, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the originator lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiffs' herein and all other mortgage loans identified in the PSA.

45. Plaintiffs are further informed and believe, and thereon allege, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificated described in the PSA, and were intended by the parties to be a bona fide or "True Sale". Since, as alleged herein below, True Sales did not actually occur. Plaintiffs allege that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

46. Plaintiffs are further informed and believe, and thereon allege, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor[2] are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiffs' Home herein.

47. Plaintiffs are informed and believe, and thereon allege, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiffs further allege, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to "PSA Issuing Entity", which Mortgage Files include the original Deeds of Trust, herein.

48. The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

49. Based upon the foregoing, Plaintiffs are further informed and believe, and thereon allege, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiffs' mortgage, including, but

not limited to:

a. The splitting or separation of title, ownership and interest in Plaintiffs' Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Deed of Trust;

b. When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

c. The failure to assign and transfer the beneficial interest in Plaintiff's Deed of Trust to "PSA Servicer", in accordance with the PSA of the Defendants, as Securitization Participants;

d. The failure to endorse, assign and transfer Plaintiffs' Note and/or mortgage to Defendant "PSA Servicer", as Trustee for "PSA Issuing Entity", in accordance with the PSA;

e. No Assignments of Beneficiary or Endorsements of the Note to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f. Defendants and each of them violated the pertinent terms of the PSA.

g. Defendants execution and recording of an Assignment of Deed of Trust and Substitution of Trustee by a person with credential in question reinforces the Plaintiff's allegation regarding the integrity of the mortgage security.

50. Plaintiffs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

## FIRST CAUSE OF ACTION
## LACK OF STANDING
## (AGAINST ALL DEFENDANTS)

51. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52. An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiffs contend that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Property. Thus, the purported power of sale by the above specified Defendants, and each of them, no longer applies. Plaintiffs further contend that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

53. Plaintiffs are informed and believe and there upon allege that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks in the middle were paid in full.

54. Plaintiffs request that this Court find that the purported power of sale contained in the Note and Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to

Defendants, and each of them. Plaintiffs further request that title to the Property remain in its name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

55. Defendants, and each of them, through the actions alleged above, have illegally commenced foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiffs great and irreparable injury in that real property is unique.

56. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of its Home and will lose the Property.

57. Plaintiffs has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiffs to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION

## DECEIT INTENTIONAL MISREPRESENTATION

### (Against All Defendants)

58. Plaintiffs re-allege and incorporate by reference all preceding paragraph as though fully set forth herein.

59. The State of California has statutorily prescribed non-judicial foreclosure procedures, in Sections §2924 et. seq. In the Cal. Civil. Code. Homes are normally foreclosed pursuant to the statutory power of sale, without a pre-foreclosure court hearing.

60. Pursuant to Statutory requirements, entities seeking to exercise a right of foreclosure pursuant to a Deed of Trust, [foreclosing on mortgages] must strictly comply with the State's Statutory Prerequisites to foreclosure.

61. The foreclosing entity must have actual assigned legal authority to file the Notice of Default ..the power of sale, Cal. Civil Code §725 a. §726. The statutory power of sale, …in virtually all California residential mortgages provides for foreclosure sales approve by the "beneficiary" and **by the trustee** named in a deed.. or if there be a successor trustee duly recorded, as in Section "§725 Cal. Civil Code.

62. Deed of Trusts, rights to exercise a power of sale by the Trustee and dictated by the owner of the note under the contract may be assigned, but a valid written assignment, consistent with the statute of frauds, is a prerequisite to effectuate an assignment Section §2932.5 of the California Code.

63. With the absence, defective or unperfected assignment or substitution, an entity attempting to avail of any rights of a Trustee, has no rights as a "trustee", and there is only one Trustee to act at a time. The trustee …or to send notices required by the statute of fraud, governing the Deed of Trust Contract acknowledged and signed by Plaintiff.

64. A foreclosing trustee and beneficial owner owe the mortgagor a duty of good faith and reasonable diligence in the foreclosure process. Failure to send a legally correct statutorily required notice is inconsistent with the duty of good faith and reasonable diligence.

65. Statute of frauds, Section §2932.5 Cal. Civil Code, dictates how an assignee, is required to possess such assignment in writing and record such.

66. The Defendants owed a duty of good faith and reasonable prudence while doing the diligence in the commencement and conduct of foreclosing proceedings.

67. The complexities of MERS, Securitization, Credit Default Swaps, Insurance Reimbursements, HAMP Monies, FDIC, and the AIG bailout make the tradition lending practices incongruent.

68. This is not the traditional model most everyone older than 40 grew up understanding. It is complex and has many side agreements.

69. The assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer. "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart

from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect."

70. The Promissory Note is a negotiable instrument. Transferring a Deed of Trust by itself does not allow enforcement of the instrument unless the Promissory Note is properly negotiated. Where an instrument has been transferred, enforcement abilities based upon possession, Section §3301 (Cal. Com. Code) negotiable instrument. "Exhibit A-1" copy of the recorded Deed of Trust, Paragraph 20, mentions that *"The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."*

71. None of the Defendants are present holder of the instrument or are non holders in possession with rights of the holder. None of the Defendants are entitled to enforce the instrument Sections 3309 & 3418 sub. (d) of the California Com. Code.

72. On December 28, 2010 "Foreclosing Trustee" stated in the Notice of Default that: The present beneficiary under such deed of trust, has executed and delivered to said agent, ..Declaration of Default and Demand .. and has **deposited with said agent such deed of trust and all documents evidencing obligations secured** thereby, … trust property to be sold to satisfy the obligations secured thereby.

73. Defendants have no enforceable rights under Cal. Com. Code 3301(a) and it is unknown where Plaintiff security interest is located. "Foreclosing Trustee" states they have the note and the Deed of Trust in a publically recorded document.

74. NY Trust Laws and IRS Tax Statutes suggest, as a matter of law, that this feat would cause a large tax burden by such acceptance into a tax exempt trust.

75. Defendants knew these actions were a false representation, done with the intent to deceive and induce reliance by Plaintiff, and others whereby the fruits of these inducements would inure to the enrichment and benefits to the defendants herein.

76. The Securities and Exchange filings for the NY Trust outlines proper legal procedure. Sections of the Pooling and Servicing Agreement as per "Exhibit A" presented in the Securitization Analysis Report, outline in detail procedures for proper processing of both the Deed of Trust and Notes, and placing them in trust in a recordable form. This specific step is necessary for the underwriting and insurance guarantees. This enforceable agreement demonstrates the deceit placed on this Court. This is an SEC regulated offering not a simple loan.

77. The SEC documents and actual documents currently in the public domain show that the Trust funding cut-off date was 01-04-2006, and any transfer subsequent to that date would require a tax attorney letter that it would not impact the tax status.

78. This Pooling and Servicing agreement further demonstrates deceit on this court. The assignment presented in the recording is untrue by operation of law. This Trust was closed to any substitutions after PSA Cut-off Date.

79. Assigning a defaulted loan into a tax sheltered fund would cause a major tax implication, tax impact to the shareholder into the millions of dollars, and in violation of the Securities Laws for which they used to register such an offering.

80. The deed of trust substitution is absolute trickery and a means to mislead the court and others into the devious and dishonest business practices these entity continue to propagate on innocent people such as Plaintiff.

81. Plaintiff has a document that states the "Original Lender". It came from "Original Servicer". It states that "Original Lender" was the warehouse lender and that the money was funded from them.

82. The Securities and Exchange Commission filings publically submitted by "SPONSOR/SELLER", did not reveal a warehouse line from "ORIGINAL LENDER". "ORIGINAL LENDER since has been closed and is now formally being investigated by the Department of Justice.

83. Plaintiff's copy of this note after it was endorsed in blank without recourse. It would appear to be a nullity and separates the note from any recordable interest. (ex-4)

84. The deceit above may be summarized for easy access of each of the parties:

> a) "ORIGINAL LENDER" information including deceit outlined in Cause of Action #1. "ORIGINAL LENDER" apparently failed to lend any of their own money for Plaintiff's loan despite indicating it had done so both contractually and verbally. Plaintiff relied on this information, acted on this information, "ORIGINAL LENDER" intended Plaintiff to act on such information while knowing this information was not true, and Plaintiff so acted to his detriment. "ORIGINAL LENDER" was fully aware of such self-dealings and deceptions. This may have issues with excessive and undisclosed "Yield Spread Premiums"
>
> b) "ORIGINAL TRUSTEE" as Trustee with such duties was patently false on its surface as it was the lender and has responded to suit as such. This Trustee has a

'contractual conflict of interest because the "ORIGINAL LENDER" was put forth to mislead and allow the events to take place in a closed closely controlled transaction without representation of Plaintiff's interests, while knowing that the information was not true and that Plaintiff relied on such honesty and presentation to act, and was induced with "ORIGINAL SERVICER" to act and that Plaintiff did to his detriments. This duel action of lender and trustee is a conflict unroofed due to the extra ordinary efforts to detail the mortgage proffering business. This "Special Relationship" goes from Insurance, Escrow, and Mortgage Broker (friends), and is incestuous, omnipresent, and indistinct able.

c) "FORECLOSING TRUSTEE", acting through instructions from "PSA SERVICER", and not a signed agent of the beneficiary and not with an agency agreement to perform for that Beneficiary. "FORECLOSING TRUSTEE' acted without regards to the truth, and not in compliance with requests. Distortion of truths done knowing the actual truth, with the intent for others to act including Plaintiff, Courts and other consumers, to the detriment of the same. They are involved in thousands of foreclosures the full extent is just now starting to surface. "FORECLOSING TRUSTEE" did not have an agency agreement with "PSA TRUSTEE" the alleged Beneficiary. "PSA SERVICER" has the agreement with "SERVICER", the Master Servicer. Filing documents known to be false as "PSA TRUSTEE" agent of the beneficiary is incorrect and further misleading. Plaintiff has sworn testimony in court depositions which allows further light to shine on these activities.

d) "SERVICER" as outlined above has acted without regards to the statutory FDCPA duties of the newly acquired Master Servicer, including notifying Plaintiff of any change in ownership or what amount was due on his account. "SERVICER" had the duty to respond to the Beneficiary Statement request governed by Section §2943 of the California Code. It did not. All done while knowing the truth. All done contrary to the statutory requirements set forth, with the intent for Plaintiff and others to act, and while knowing what they were doing was not truthful. The Plaintiff relied on this to his detriments, and has been damaged. Plaintiff diligence and documents will support these claims, and that of expert witnesses.

e) "MERS" has a duty as part of the agreements set for in the "MERS" contracts with member banks and as nominee of the beneficiary and note holder. The requirements are

1
2
3
4
5
6
7
8

· set forth in their rules 6, 7, 8. "MERS" knows that its rules are not followed especially rule 8, Foreclosures. "MERS" did not own or could not own an interest in Plaintiff property as set forth with the Notice of Default in "MERS" name. "MERS" knew this and they have acted to create an opaque window into the "Securitization" and selling of home loans. Members are to follow rules. "MERS" has purposely allowed this to occur while knowing all the time the damages that would result. Plaintiff has been damaged by such reckless behaviors and the surface is now being scrapped. The governmental Agency Fannie Mae will not allow MERS to be named in any Foreclosure proceedings as announced in their March 30, 2010 SVC-2010-5 publication.

9
10
11
12
13
14
15
16
17
18

f) "PSA TRUSTEE" has a duty as Trustee of an SEC filed Securitization Trust to follow the Pooling and Servicing Agreements and also to follow NY Trusts, SEC Security Laws and IRS tax laws. "PSA TRUSTEE" as alleged assigned Beneficiary took in assignment of this defaulted loan had a direct assigned contractual duty to Plaintiff. A loan in default is not allowed to be added to a tax free trust by the NY Trust Laws. "PSA TRUSTEE" knew this was the fact. "PSA TRUSTEE" did these acts knowing that they were not allowed. "PSA TRUSTEE" did this while creating a paper trail that Plaintiff and others would rely on to their detriments. "PSA TRUSTEE" knew the damages that this would cause. "PSA TRUSTEE" further knew that Plaintiff's loan was paid by either cross collateralization, insurance, swaps, or other mechanisms. PSA TRUSTEE is trying to collect on the same loan multiple times."

19
20
21
22
23

85. Plaintiff had no indication that he should not rely on the fraudulent and deceitful misrepresentation and for that he has suffered the resulting damages of loss of personal savings, costs of the representation, credit damages, and opportunity costs resulting in the full time focus of his representation, and other damages determined at trial. This maybe subject to punitive, consequential, emotional distress, and recession.

24
25
26
27
28

## THIRD CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

86. Plaintiffs re-allege and incorporated by reference all preceding paragraphs as though

fully set forth herein.

87. The actions of Defendants, as set forth herein, have resulted in the Plaintiffs being threatened with the loss of the Property.

88. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

89. Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust.  In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

90. Defendants' conduct – fraudulently attempting to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

91. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiffs, such that Plaintiffs would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

92. At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt.  Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

93. As an actual and proximate cause of Defendants attempt to fraudulently foreclose on Plaintiff's home, the Plaintiffs have suffered severe emotional distress, including but not limited to

lack of sleep, anxiety, and depression.

94. Plaintiffs did not default in the manner state in the Notice of Default, yet because Defendants' outrageous conduct, Plaintiffs have been living under the constant emotional nightmare of losing the Property.

95. As a proximate cause of Defendant's conduct, Plaintiffs have experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

96. The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despise by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct

## FIFTH CAUSE OF ACTION

## SLANDER OF TITLE

## (Against All Defendants and Does 45-60)

97. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

98. Plaintiffs incorporate here each and every allegation set forth above. Defendants, and each of them, disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the RECORDED DOCUMENTS.

99. Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as

denying, disparaging, and casting doubt upon Plaintiffs' legal title to the Property.  By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiffs' legal title was made to the world at large.

100.    As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' title to the Property has been disparaged and slandered, and there is a cloud on Plaintiffs' title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

101.    As a further proximate result of Defendant's conduct, Plaintiffs have incurred expenses in order to clear title to the Property.  Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the property has been removed.  The amounts of future expenses and damages are not ascertainable at this time.

102.    As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered humiliation, mental anguish, anxiety, depression and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continue to suffer such injuries on an ongoing basis.  The amount of such damages shall be proven at trial.

103.    At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiffs and deprive them of their exclusive right, title and interest in the Property, and to obtain the Property for their own use by unlawful means.

104.    The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious.  Therefore, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

# FIFTH CAUSE OF ACTION

## QUIET TITLE

### (Against All Defendants)

105.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

106.    Plaintiffs are entitle to equitable relief by a judicial decree and order declaring Plaintiffs to be the title owner of record of the Property as to the effective date of said cancellation, and quieting Plaintiffs' title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void, and avoiding any liens or encumbrances upon the Property created by Defendants or by their punitive predecessors, or by any of them.

107.    Plaintiffs desire and is entitled to a judicial declaration quieting title in Plaintiffs as of the date on which is loan transaction was consummated.

# SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF

### (Against All Defendants)

108.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

109.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights and duties regarding the Note and Trust Deed.

110.    Plaintiffs contend that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

111.    Plaintiffs are informed and believed and upon that basis alleges that Defendants dispute Plaintiffs contention and instead contend they may properly foreclose upon the Property.

112. Plaintiffs thereof request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

113. Plaintiffs request a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

114. Plaintiffs request a determination of the validity of the NOD.

115. Plaintiffs request a determination of whether any Defendant has authority to foreclose on the Property.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2932.5

## (Against all Defendants)

116. Plaintiffs re-allege and incorporate by reference all preceding paragraph as though fully set forth herein.

117. California Civil Code § 2932.5 provides.

> Where a power to sell real property is given to a mortgagee, or other encumbrances, in an instrument intended to secure the payment of money, the power is part of the Security and vests in any person who by assignment becomes entitled to payment of the money secured by the instruments. The power of sale may be exercised by the assigned if the assignment us duly acknowledged and recorded.

118. Plaintiffs are informed and believe, and thereon allege that § 2932.5 require the recordation of an assignment of the beneficial interest in a deed of trust prior to foreclosure. Defendants, and each of them, cannot show valid and recorded assignments.

119. As a proximate result of Defendant's action, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

120.    WHEREFORE, Plaintiffs prays for relied as set forth below.

## EIGHTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 ET SEQ
### (Against All Defendants and Does 80-100)

121.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

## RECENT DEVELOPMENTS AND DOCUMENT FRAUD

122.    On September 24, 2010, California Attorney General, Edmund G. Brown, Jr. (aka Jerry Brown) ("AG"), directed ALLY Financial, Inc., which owns GMAC, Mortgage LLC, to stop foreclosures in California until it proves it is complying with State law.

123.    On October 1, 2010, the AG similarly requested that a J.P. Morgan Chase stop foreclosure in California until it proves it is complying with State law.

124.    Since then, Bank of America has halted foreclosures in 23 judicial foreclosure States.

125.    On or about October 11, 2010, BAC announced that it is temporarily halting foreclosures nationwide.

126.    The impetus of these necessary but drastic measures stems from allegations of document fraud on the part of the banks and their servicers. This epidemic is not limited to the banks listed above, but is an industry wide problem.

127.    During the securitization era, Banks and the resulting trusts, in the rust to securitized mortgages and sell those to investors routinely ignored the critical step of obtaining mortgage assignments from the original lenders to the securities companies to the trusts.

128.    Now, years later, when the companies "servicing" the trusts need to foreclose, there

are no documents available to documents the proper chain of title because none were originally created. As a result, banks are creating the missing documents or outsourcing the documents to companies like Lender Processing Services to produce the needed assignments. This practice was admitted by deposed bank executives such as GMAC's Jeffrey Stephen who admitted in sworn deposition testimony to signing more than 500 documents a day and up to 10, 000 documents a month related to foreclosures without reviewing them.

129.    Due to the strict timelines and guidelines to complete a foreclosure, banks are also fabricating other documents to comply with California's foreclosure guidelines.

130.    The impact of these allegations is so cogent that Old Republic National Title Company will no longer insure the title on homes foreclosed by J.P. Morgan Chase or GMAC, Mortgage LLC.

131.    As further proof of the unlawful business practices, other state legislatures have taken steps to make the process more transparent (see Arizona State Senate Bill 1259, requiring non-originating foreclosure lenders to produce full chain of title to verify ownership). http://www.azleg.gov/DocuemtnsForBill.asp?Bill_Number=SB1259&Session_ID=102

132.    Other states have taken the lead to void foreclosure sales by parties who lack standing to foreclose. *See, e.g., U.S. Bank Nat. Ass'n v. Ibanez* (2011) 941 N.E.2d 40. Most recently, an Alabama Circuit recognized the legal ramifications regarding the failure of banks and their trustees to properly transfer Notes and Deeds of Trusts. In *Phyllis Horace v. La Salle Bank National Association, Et Al,* 57-cv-2008-00362.00, the Alabama Circuit Court not only sided with the homeowner on this exact issue; the court issued an order **permanently enjoining** the defendant trust, LaSalle Bank National Association, from foreclosing on the plaintiff's house because LaSalle failed under New York law and its own Pooling and Servicing Agreement to properly transfer the plaintiff's mortgage note on the plaintiff's home.

133. In permanently forestalling any foreclosure on the home by defendant, the court did not mince words: "First, the Court is surprised to the point of astonishment that the defendant (LaSalle Bank National Association) did not comply with the terms of its own Pooling and Servicing Agreement and further did not comply with New York Law in attempting to obtain assignment of Plaintiff Horace's notes and mortgage. Second, plaintiff Horace is a third party beneficiary of the Pooling and Servicing Agreement created by the defendant trust (LaSalle Bank National Association). Indeed without such Pooling and Servicing Agreements, Plaintiffs Horace and other mortgagors similarly situated would never have been able to obtain financing."

134. Plaintiffs are informed and believe, and therefore allege, that Defendants, and each of them, engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

135. The above specified Defendant, and each of them, as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, state law and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded within this jurisdiction. The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practices.

136. Plaintiffs are informed and believe, and thereon allege that Defendant lacked authority to execute an assignment of the Deed of Trust from the original beneficiary to Defendant.

137. Plaintiffs are informed and believe, and thereon allege that Defendant at all relevant times had knowledge that no such authority was ever bestowed upon it by the original lender, yet Defendant still caused to be recorded the false documents with the county recorder. Further, the

assignment recorded is signed by an individual purporting to be the "Assistant Secretary" of MERS. Plaintiffs believe and thereupon allege that this individual did not have the authority or capacity to sign on behalf on MERS to cause such substitutions or assignments. As such, Plaintiffs are informed and believe, and thereon allege that certain misrepresentations, including sworn statements. Were made to the public to cause the notary public to perform an improper notary act on a document.

138. The business practices of the above specified Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate California law as alleged herein above. Further, the above specified Defendants, and each of them, knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.

139. Pursuant to Sections 17200 et seq. of the California *Business and Professions Code,* unfair business practices include any unlawful, unfair, misleading or fraudulent business practice. The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provision of §§ 17200 et seq of the California *Business and Professions Code.*

140. As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Plaintiffs have incurred damages in that Plaintiffs' Home is now subject to foreclosure at the hands of the above specified Defendants, and each of them, all by reason of which Plaintiffs have been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.

141. As a further direct and proximate result if the unfair business practices of the above specified Defendants, and each of them, Plaintiffs are entitle to an order or preliminary injunction prohibiting said Defendants, and each of them, from selling or attempting to sell, or causing to be

sold, any interest whatsoever in the Home.

## NINTH CAUSE OF ACTION

### Violation of Section § 726 of the California Code of Civil Procedure

### "PSA TRUSTEE"

144.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

145.    These provisions are "to prevent multiplicity of actions, to compel exhaustion of all security and to require the debtor to be credited with the fair market value of the secured property. It may well be interpreted as to an entity collection twice or more for the same debt. This may cause the security interest to be cancelled.

146.    TRUSTEE is not a registered trust in California to do business, and has received over $8.5 billion payments from AIG's **default**, HAMP program, and has been paid untold amounts from any default that occurs, it is paid by counter parties, and mortgage insurance reimbursements of untold amounts.

147.    Plaintiff alleges that TRUSTEE has already been paid for the value of the security interest Plaintiff's property, which furthers the need for accurate accounting including previous payoff that would have cover such debt.

148.    TRUSTEE is requested by discovery to present an accurate detail of the accountings. Including appropriately timed sales and assignments and payoffs, and if defendant has received such credits first, then the security interest in Plaintiff's property would be lost. TRUSTEE takes advantage of the insurances and credit enhancements inside of the trust (such as excess interest reserves, over collateralization reserves, NIMS or other insurance policies which were written by AIG), which cover losses on the mortgage loans.

Plaintiff request that the security interest in this property be removed based on Section § 726 of California Code of Civil Procedure as this interest has been paid.

## TENTH CAUSE OF ACTION
## CIVIL RICO

## COUNT ONE

Acquisition and Maintenance of an Interest in and Control of
an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(b)

149. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

150. At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

151. During the ten (10) calendar years preceding August 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

152. Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

153. Pursuant to the original Statutes at Large, the RICO laws itemized above are to be *liberally* construed by this honorable Court. Said construction rule was never codified in Title 18 of the United States Code, however. See 84 Stat. 947, Sec. 904, Oct. 15, 1970.

154. *Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).

## COUNT TWO:
Conduct and Participation in a RICO *Enterprise*
through a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(c)

155. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

156. At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

157. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

158. During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

159. Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

160. Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court. Said construction rule was never codified in Title 18 of the United States Code, however. *Respondeat superior* (as explained above).

### COUNT THREE:
Conspiracy to Engage in a
*Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(d)

161. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

162.   At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(b) and (d).

163.   At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(c) and (d).  See also 18 U.S.C. §§ 1961(4), (5) and (9).

164.   During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

165.   Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

166.   Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however. *Respondeat superior* (as explained above).

167. USC 891-984 Extortionate credit transactions;  1341 mail fraud, 1343 wire fraud, 1344 financial institution fraud, 1503 obstruction of justice, 1952 racketeering, 1956 laundering of monetary instruments, 1957 monetary transaction derived from specified unlawful activity, and 29 USC 186 501c – fraud connected with a case under title 11, fraud in the sale of securities.

Please take notice that Plaintiff demands trial by jury in this action

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs will ask for the following for each Cause of Action to be

awarded:

## FIRST THROUGH TENTH CAUSE OF ACTION

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Plaintiffs are the prevailing party;

    b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c. The Sponsor has no enforceable secured or unsecured claim against the Property;

    d. The Depositor has no enforceable secured or unsecured claim against the Property;

    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

///

///

////

///

///

The Mortgage Originator has no enforceable secured or unsecured claim against the Property.

Dated: ~~February 24, 2012~~
March 24, 2012

_____
Amie Tan, In Pro Se
Attorney for Plaintiff

Dated: February 24, 2012

_____
Allen Tan, In Pro Se
Attorney for Plaintiff

# "SUB-EXHIBITS TO A"

Exhibit A-1. DEED OF TRUST
Exhibit A-2. 1st NOTICE OF DEFAULT
Exhibit A-3. 1st ASSIGNMENT OF DEED OF TRUST
Exhibit A-4. 1st NOTICE OF TRUSTEE'S SALE
Exhibit A-5. 2nd ASSIGNMENT OF DEED OF TRUST
Exhibit A-6. 2nd NOTICE OF DEFAULT
Exhibit A-7. 2nd NOTICE OF TRUSTEE'S SALE
Exhibit A-8. 3rd ASSIGNMENT OF DEED OF TRUST
Exhibit A-9. 3rd NOTICE OF TRUSTEE'S SALE
Exhibit A-10.     TRUSTEE'S DEED UPON SALE

# Exhibit A-1. DEED OF TRUST

RECORDING REQUESTED BY
UNITED TITLE COMPANY

PREPARED BY AND
WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Loan Number: 671009700
Servicing Number: 002042136-8

2005540715    12/21/2005 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    48.00

14   POS

72 05 1 432      [Space Above This Line For Recording Data]

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on    December 13, 2005
The trustor is
AMIE TAN AND ALLEN TAN WIFE AND HUSBAND AS JOINT TENANTS

("Borrower").

The trustee is    PREMIER TRUST DEED SERVICES, INC.

("Trustee").

The beneficiary is
   Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of    CALIFORNIA
and whose address is    3 Ada, Irvine, CA 92618

("Lender").

Borrower owes Lender the principal sum of
   EIGHT HUNDRED THOUSAND DOLLARS NO CENTS
       , , ,AND NO/100THs      Dollars (U.S. $800,000.00     ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on    January 01, 2036
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in     Alameda         County, California:
074-1351-049

LOT 49, TRACT 6877, FILED APRIL 22, 1997, MAP BOOK 231, PAGE 15, ALAMEDA COUNTY RECORDS, AS CORRECTED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JULY 7, 1997, SERIES NO. 97-167333.

which has the address of           3 DOW CRT, ALAMEDA

(Street, City)

California        94501-6407      ("Property Address");
           (Zip Code)

**CALIFORNIA** - Single Family
Page 1 of 8

CAD10011 (10-07-98)

Loan Number:   671009700          Servicing Number:   002042136-8          Date:   12/13/05

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federal related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. @ 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits or accounts of which are insured or guaranteed by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this

CAD10012 (10-07-98)

Loan Number:  671009700        Servicing Number:  002042136-8        Date:  12/13/05

Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**

Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights

CAD10013 (10-07-98)

Loan Number: 671009700          Servicing Number: 002042136-8          Date: 12/13/05

or powers of Lender or trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect, Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof, Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property, Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect, If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained, Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this

CAD10014 (10-07-98)

Loan Number:  671009700          Servicing Number:   002042336-8          Date:   12/13/05

Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and

CAD10015 (10-07-98)

Loan Number: 671009700          Servicing Number:     002042136 8          Date: 12/13/05

to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, or other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any monthly installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with Trustee this Security Instrument and any notes and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Borrower, shall sell the Property at the time and place specified by Trustee in such notice of sale, or at the time to which such notice sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset its bid to the extent of the total amount owing to it under the Note and this Security Instrument, including Trustee's fees and expenses. Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by Trustee at the time and place last appointed for sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Substitute Trustee. Lender may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named in this Security Instrument or acting hereunder. Such instrument shall be executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the property is situated and shall be conclusive proof of the proper substitution of such successor Trustee or Trustees. Such successor Trustee or Trustees shall, without conveyance from the predecessor Trustee, succeed to all its title, estate, rights, powers and duties. The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution permitted by law.

24. Request for Notices. Borrower requests that copies of the notices of default and sale be sent to Borrower's address

CAD10016 (10-07-98)

Loan Number: 671009700          Servicing Number: 002042136-8          Date: 12/13/05

which is the Property Address.

 **25. Statement of Obligation Fee.** Lender may collect a fee equal to the maximum amount as may from time to time be allowed by law for furnishing any statement of obligation, beneficiary's statement, beneficiary's demand or any other statement regarding the condition of or balance owing under the Note or secured by this Security Instrument.

 **26. Offsets.** No indebtedness secured by this Security Instrument shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower (or subject to Paragraph 17 of this Security Instrument, any successor to Borrower) now or hereafter may have or may claim to have against lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws) and any comparable or similar law of any other jurisdiction, Section 431.70 of the California Code of Civil Procedure provides as follows:

  "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section is not available if the cross-demand is barred for failure to asset it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

 **27. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

 **28. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

 **29. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by law.

 **30. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

 **31. Construction of the Security Instrument.** Borrower and Lender agree that this Security Instrument shall be interpreted in a fair, equal, and neutral manner as to each of the parties, notwithstanding the provisions of Section 1654 of the California Civil Code. Section 1654 of the California Civil Code provides as follows:

  "In the cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

 **32. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien reconveyances and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

 **33. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s).

CA010017 (10-07-98)

Loan Number: 671009700     Servicing Number: 002042136-8     Date: 12/13/05

Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

34. **Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

35. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

36. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider     [X] Planned Unit Development Rider     [ ] Occupancy Rider
[ ] Other(s) (specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____  -Borrower       _____  -Borrower
AMIE TAN

_____  -Borrower       _____  -Borrower
ALLEN TAN

_____  -Borrower       _____  -Borrower

_____[Space Below This Line For Acknowledgment]_____

State of California, County of _____ALAMEDA_____ )SS:

On _Dec. 14, 2005_ before me, the undersigned, a Notary Public

in and for said State, personally appeared _AMIE TAN + ALLEN TAN_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.     Signature _Durene Fong_
(Reserved for official seal)         DURENE FONG

DURENE FONG
Commission # 1539837
Notary Public - California
Alameda County
My Comm. Expires Dec 31, 2008

Page 8 of 8

Name (typed or printed) _DURENE FONG_
My commission expires: _Dec 31, 2008_

CAD100:8 (10-07-98)

ORDER NO.: 72051432

LEGAL DESCRIPTION

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE STATE OF CALIFORNIA, CITY OF ALAMEDA, COUNTY OF ALAMEDA, AND IS DESCRIBED AS FOLLOWS:

LOT 49, TRACT 6877, FILED APRIL 22, 1997, MAP BOOK 231, PAGE 15, ALAMEDA COUNTY RECORDS, AS CORRECTED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JULY 7, 1997, SERIES NO. 97-167333.

ASSESSOR'S PARCEL NO. 074-1351-049

Loan Number: 671009700    Servicing Number: 002042136-8    Date:    12/13/05

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made December 13, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3  DOW CRT,  ALAMEDA, CA 94501-6407

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as

CALIFORNIA HERITAGE BAY

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER - Single Family--FNMA/FHLMC UNIFORM INSTRUMENT  Form 3150 09/90
Page 1 of 2                                                        USRD111.wp (11-19-04)

Loan Number:  671009700     Servicing Number:  002042136-8      Date:  12/13/05

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender.  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by applicable law, may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)         _____ (Seal)
AMIE    TAN                      -Borrower                                        Borrower

_____ (Seal)         _____ (Seal)
ALLEN   TAN                      -Borrower                                       -Borrower

_____ (Seal)         _____ (Seal)
                                 -Borrower                                       -Borrower

**MULTISTATE PUD RIDER** - Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 2 of 2                                                                 USRI0112.wp (11-19-04)

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made December 13, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
      Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

3  DOW CRT,   ALAMEDA, CA 94501-6407

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of          7.850%          . The
Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   January 01     2011
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
      SIX AND 59/100                              percentage point(s) ( 6.590%     )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                         USRI0021 (02-23-99)

Loan Number: 671009700    Servicing Number: 002042136-8    Date: 12/13/05

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than

10.850%   or less than  7.850%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than  13.850%    or less than  7.850%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay those sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

# ILLEGIBLE NOTARY SEAL DECLARATION

## (Government Code 27361.7)

I declare under penalty of perjury that the notary seal on the document to which this statement is attached, reads as follows:

Name of Notary: _Aurene Tong_

Commission Number: _1539837_

Notary Public State: _California_

County of Commission: _Alameda_

My Commission Expires: _12-31-2008_

Signature of Declarant: _G. Cautiverio_

Print Name of Declarant: ___G. Cautiverio___

City and State of Declarant: _San Ramon, California_

Date Signed: _12-20-05_

# Exhibit A-2.  1ST NOTICE OF DEFAULT

②

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

and when recorded mail to
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA 92711-1988



2009224573    07/14/2009 03:24 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    18.00

3   PGS

0 90 S00 1 / 6 ___ SPACE ABOVE THIS LINE FOR RECORDERS USE ___

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## "IMPORTANT NOTICE"

T.S. No: H392880 CA      Unit Code: H      Loan No: 0020421368/TAN      Investor No:
671009700
AP #1: 074-1351-049-00
Property Address: 3 DOW CRT, ALAMEDA, CA 94501-6407

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses within the
time permitted by law for reinstatement of your account, which is normally five business days
prior to the date set for the sale of your property. No sale date may be set until three months
from the date this notice of default may be recorded (which date of recordation appears on this
notice).

This amount is $42,069.28, As of July 21, 2009

and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance
and taxes) required by your note and deed of trust or mortgage. If you fail to make future
payments on the loan, pay taxes on the property, provide insurance on the property, or pay
other obligations as required in the note and deed of trust or mortgage, the beneficiary or
mortgagee may insist that you do so in order to reinstate your account in good standing. In
addition, the beneficiary or mortgagee may require as a condition to reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard
insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of
the entire amount you must pay. You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default at
the time payment is made. However, you and your beneficiary or mortgagee may mutually
agree in writing prior to the time the notice of sale is posted (which may not be earlier than the
end of the three-month period stated above) to, among other things, (1) provide additional time
in which to cure the default by transfer of the property or otherwise; or (2) establish a
schedule of payments in order to cure your default; or both (1) and (2).

Page 2
### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No: H392880 CA     Unit Code: H     Loan No: 0020421368/TAN     Investor No:
671009700
AP #1: 074-1351-049-00

Following the expiration of the time period referred to in the first paragraph of this notice,
unless the obligation being foreclosed upon or a separate written agreement between you and
your creditor permits a longer period, you have only the legal right to stop the sale of your
property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if
your property is in foreclosure for any other reason, contact:
WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE STRUCTURED ASSET
SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-OPT1
C/O American Home Mortgage
Servicing Inc.
4875 Belfort Road
Jacksonville, FL 32256
(904) 996-9600

If you have any questions, you should contact a lawyer or the government agency which may
have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may
offer your property for sale, provided the sale is concluded prior to the conclusion of the
foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT
TAKE PROMPT ACTION**
NOTICE IS HEREBY GIVEN THAT: POWER DEFAULT SERVICES, INC. is duly
appointed Trustee under the following described Deed of Trust:

**Trustor:** AMIE TAN, ALLEN TAN

Recorded December 21, 2005  as Instr. No. 2005540715 in Book --- Page --- of Official
Records in the office of the Recorder of ALAMEDA County; CALIFORNIA

Said Deed of Trust secures certain obligations including one Note for the sum of **$800,000.00**

That the Beneficial interest under such Deed of Trust and the obligations secured thereby are
presently held by the Beneficiary; That a breach of, and default in, the obligations for which
such Deed of Trust is security has occurred in that payment has not been made of:
**THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH
BECAME DUE FEBRUARY 1, 2009 AND ALL SUBSEQUENT INSTALLMENTS OF
PRINCIPAL, INTEREST AND IMPOUNDS. PLUS LATE CHARGE(S).  PLUS
RETURNED CHECK CHARGE(S) IN THE AMOUNT OF $25.00.  PLUS
MISCELLANEOUS FEE(S) IN THE AMOUNT OF $75.00. RECOVERABLE
CORPORATE ADVANCE IN THE AMOUNT OF $165.00.**

That by reason thereof, the present Beneficiary under such Deed of Trust has executed and
delivered to said duly appointed Trustee, a written Declaration of Default and Demand for
Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all
documents evidencing obligations secured thereby, and has declared and does hereby declare
all sums secured thereby immediately due and payable and has elected and does hereby elect
to cause the trust property to be sold to satisfy the obligations secured thereby.
The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary
purusant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the
mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with
due diligence to contact the borrower as required by California Civil code 2923.5.

**Page 3**
**T.S. No: H392880 CA     Unit Code: H     Loan No: 0020421368/TAN     Investor No: 671009700**
**DATED 07/14/09**

T.D. SERVICE COMPANY AS AUTHORIZED AGENT FOR THE BENEFICIARY BY
LSI Title Company as Agent

BY _____     BY _D. GUAJARDO_     **AUTHORIZED AGENT**

We are assisting the Beneficiary to collect a debt and any information we obtain will be used
for that purpose whether received orally or in writing.

# Exhibit A-3. 1ST ASSIGNMENT OF DEED OF TRUST

AND

Recording Requested By:
**Ron Meharg. 888-362-9638**
When Recorded Return To:
**DOCX**
1111 Alderman Dr.
Suite 350
Alpharetta, GA 30005

| AHMA | 647 | 67699800 |
|------|-----|----------|

**CRef#:08/18/2009-PRef#:A030-POF**
**Date:08/06/2009-Print Batch ID:6754**
Property Address:
**3 DOW CRT**
**ALAMEDA, CA 94501-6407**
CAaosi-eR2.0   01/07/2009      2009(c) by DOCX LLC



2009258525        08/12/2009 10:44 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        15.00



2  PGS

This Space for Recorder's Use Only



## ASSIGNMENT OF DEED OF TRUST

        **FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and sufficiency of which is hereby
acknowledged, **American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage
Corporation,** whose address is **6501 Irvine Center Drive, Irvine, CA 92618,** does by these presents hereby grant,
bargain, sell, assign, transfer, convey, set over and deliver unto **Wells Fargo Bank, N.A., as Trustee for the
Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-OPT1,** whose
address is **9062 Old Annapolis Road, Columbia, MD 21045-1951,** the following described deed of trust, securing
the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all
liens created or secured thereby, all obligations therein described, the money due and to become due thereon with
interest, and all rights accrued or to accrue under such deed of trust.

Original Borrower(s): **AMIE TAN AND ALLEN TAN WIFE AND HUSBAND AS JOINT TENANTS**
Original Beneficiary: **OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION**
Date of Deed of Trust: **12/13/2005**                **Loan Amount: $800,000.00**
Recording Date: **12/21/2005**      Document #: **2005540715**
Misc. Comments: **ASSIGNMENT EFFECTIVE DATE: 7/6/2009**
**LEGAL DESCRIPTION: LOT 49, TRACT 6877, FILED APRIL 22, 1997, MAP BOOK 231, PAGE 15,
ALAMEDA
COUNTY RECORDS, AS CORRECTED BY THAT CERTAIN CERTIFICATE OF CORRECTION
RECORDED JULY 7, 1997, SERIES NO. 97-167333.**
and recorded in the official records of the **County of Alameda,** State of **California** affecting Real Property and
more particularly described on said Deed of Trust referred to herein.

        **IN WITNESS WHEREOF,** the undersigned has caused these presents to be executed on this date of
**08/07/2009.**

                                **American Home Mortgage Servicing, Inc. as successor-in-interest
                                to Option One Mortgage Corporation**

                                Linda Green
                                **Vice President**

State of **GA**
County of **Fulton**

On this date of **08/07/2009**, before me, _____ **CHRIS M. IVEY** _____ , Notary Public, personally appeared **Linda Green**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public: _____

Chris M. Ivey
NOTARY PUBLIC
Fulton County
State of Georgia
My Commission Expires
April 13, 2013

# Exhibit A-4. 1ST NOTICE OF TRUSTEE'S SALE

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

And when recorded mail to
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA 92711-1988



2009324708    10/15/2009 11:55 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:         15.00

2    PGS

090500116 Space above this line for recorder's use _____

## NOTICE OF TRUSTEE'S SALE

T.S. No: H392880 CA    Unit Code: H    Loan No: 0020421368/TAN    Investor No: 671009700
AP #1: 074-1351-049-00

POWER DEFAULT SERVICES, INC., as duly appointed Trustee under the following described Deed of Trust
WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (in the forms which are lawful
tender in the United States) and/or the cashier's, certified or other checks specified in Civil Code Section 2924h
(payable in full at the time of sale to T.D. Service Company) all right, title and interest conveyed to and now
held by it under said Deed of Trust in the property hereinafter described:

Trustor: AMIE TAN, ALLEN TAN

Recorded December 21, 2005 as Instr. No. 2005540715 in Book --- Page --- of Official Records in the
office of the Recorder of ALAMEDA County; CALIFORNIA, pursuant to the Notice of Default and Election
to Sell thereunder recorded July 14, 2009 as Instr. No. 09-224574 in Book --- Page --- of Official Records in
the office of the Recorder of ALAMEDA County CALIFORNIA.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED DECEMBER 13, 2005. UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU
NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

3 DOW CRT, ALAMEDA, CA 94501-6407
"(If a street address or common designation of property is shown above, no warranty is given as to its
completeness or correctness)."

Said Sale of property will be made in "as is" condition without covenant or warranty, express or implied,
regarding title possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said
Deed of Trust, with interest as in said note provided, advances, if any, under the terms of said Deed of Trust,
fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Said sale will be held on:
NOVEMBER 4, 2009, AT 12:00 P.M. *ON THE STEPS TO THE COUNTY COURTHOUSE, 1225
FALLON STREET, OAKLAND, CA

At the time of the initial publication of this notice, the total amount of the unpaid balance of the obligation
secured by the above described Deed of Trust and estimated costs, expenses, and advances is $834,221.33. It is
possible that at the time of sale the opening bid may be less than the total indebtedness due.

**Page 2**
T.S. No: H392880 CA      Unit Code: H     Loan No: 0020421368/TAN      Investor No: 671009700

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows: The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed; The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.  If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the monies paid.  The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.
Date:  October 15, 2009

POWER DEFAULT SERVICES, INC. as said Trustee, by T.D. Service Company as Agent for Trustee and as Authorized Agent for the Beneficiary

BY
KIMBERLY THORNE, ASSISTANT SECRETARY
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210, P.O. BOX 11988
SANTA ANA,  CA 92711-1988
(714) 543-8372

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.

If available, the expected opening bid and/or postponement information may be obtained by calling the following telephone number(s) on the day before the sale: (714) 480-5690 or you may access sales information at www.ascentex.com/websales.

# Exhibit A-5. 2ND ASSIGNMENT OF DEED OF TRUST

Recording Requested By:
Ron Meharg, 8888-362-9638
When Recorded Return To:
**DOCX**
1111 Alderman Dr.
Suite 350
Alpharetta, GA 30005

| DXFX1 | 647 | 67699800 |



2009393856   12/23/2009 10:21 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:          15.00

2 PGS

CRef#:08/18/2009-PRef#:A078-POF
Date:08/06/2009-Print Batch ID:9558
Property Address:
**3 DOW CRT**
**ALAMEDA, CA 94501-6407**
C\Amsr-cR2 0   11/24/2009     2009(c) by DOCX LLC



This Space for Recorder's Use Only



## ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which is hereby acknowledged, **American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation**, whose address is **6501 Irvine Center Drive, Irvine, CA 92618**, does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over and deliver unto **Wells Fargo Bank, N.A., as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-OPT1** whose address is **9062 Old Annapolis Road, Columbia, MD 21045-1951**, the following described deed of trust, securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such deed of trust.

Original Borrower(s): **AMIE TAN AND ALLEN TAN WIFE AND HUSBAND AS JOINT TENANTS**
Original Beneficiary: **OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION**
Date of Deed of Trust: **12/13/2005**          Loan Amount: **$800,000.00**
Recording Date: **12/21/2005**   Document #: **2005540715**
Misc. Comments: **ASSIGNMENT EFFECTIVE DATE: 7/6/2009**
**LEGAL DESCRIPTION: LOT 49, TRACT 6877, FILED APRIL 22, 1997, MAP BOOK 231, PAGE 15, ALAMEDA**
**COUNTY RECORDS, AS CORRECTED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JULY 7, 1997, SERIES NO. 97-167333.**
and recorded in the official records of the **County of Alameda**, State of **California** affecting Real Property and more particularly described on said Deed of Trust referred to herein.

**IN WITNESS WHEREOF**, the undersigned has caused these presents to be executed on this date of 12/05/2009.

American Home Mortgage Servicing, Inc. as successor-in-interest
to Option One Mortgage Corporation

**Kim French**
**Vice President**

State of **GA**
County of **Fulton**

On this date of **12/05/2009**, before me, **KATHY NANCY EVANS**                    , Notary Public, personally appeared **Kim French**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public:

Kathy Nancy Evans
NOTARY PUBLIC
Fulton County
State of Georgia
My Commission Expires
November 22, 2013

# Exhibit A-6. 2ND NOTICE OF DEFAULT



Recording Requested By
and When Recorded Mail to:

Default Resolution Network
17592 E. 17th Street, Suite 300
Tustin, CA 92780

2010390064      12/28/2010 03:35 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:
                                    21.00

                                    2    PGS

Trustee Sale No: 10-12393-6.
Loan No: 0020421368

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $53,403.32 as of December 27, 2010, and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact :**

American Home Mortgage Servicing, Inc.
4875 Belfort Road Suite 130
Jacksonville, FL 32256
Phone: 877-304-3100  REF# 0020421368 .

If you have any questions, you should contact a lawyer or the governmental agency which
may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you
may offer your property for sale, provided the sale is concluded prior to the conclusion of the
foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT
ACTION.  NOTICE IS HEREBY GIVEN THAT:** Default has been declared under a Deed of
Trust dated as of December 13, 2005, executed by AMIE TAN AND ALLEN TAN, WIFE AND
HUSBAND AS JOINT TENANTS, as trustor (the "Original Trustor"), to secure obligations in
favor of OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION, as
beneficiary, recorded on December 21, 2005, as Instrument No. 2005540715 of Official Records
in the office of the Recorder of Alameda County, California  (the "Original Deed of Trust"), and
that

The Deed of Trust encumbers certain property more particularly described therein (the "Trust
Property"), and that

The Deed of Trust secures the  payment of and the performance of certain obligations,
including but not limited to, the obligations set forth in a promissory note(s) with a face
amount of $800,000.00, and that

A breach of, and default in, the obligations for which said Deed of Trust is security has
occurred in that the trustor has failed to perform obligations pursuant to or under the Note
and/or the Deed of Trust, specifically: failed to pay payments which became due;   together
with late charges due; and that

By reason thereof, the Beneficiary has declared and does hereby declare all sums secured
thereby immediately due and payable and has elected and does hereby elect to cause the
Trust Property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to
California Civil Code § 2923.5(c) declares that the mortgagee, beneficiary or the mortgagee's
or beneficiary's authorized agent has either contacted the borrower or tried with due diligence
to contact the borrower as required by California Civil Code § 2923.5.

Date: December 27, 2010

Default Resolution Network
Agent for the Beneficiary By: ServiceLink, its Agent


By: _____

                          S. Gutierrez  ASWT

# Exhibit A-7. 2ND NOTICE OF TRUSTEE'S SALE

RECORDING REQUESTED BY
AND MAIL TO
When Recorded Mail To:
Recording Requested By
ServiceLink



2011097688    04/01/2011 09:32 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    21.00

2    PGS

Fidelity National Title Company
17592 E. 17th Street, Suite 300
Tustin, CA 92780

---

**Trustee Sale No. 10-12393-6 .**    **Loan No. 0020421368**    **Title Order No. 670701**

**APN 074-1351-049-00**

### NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED December 13, 2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On April 21, 2011, at 12:00 PM, at the Fallon St emergency exit to the Alameda County Courthouse, 1225 Fallon St. Oakland, CA,Power Default Services, Inc., as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on December 21, 2005, as Instrument No. 2005540715 of Official Records in the office of the Recorder of Alameda County, CA , executed by: AMIE TAN AND ALLEN TAN, WIFE AND HUSBAND AS JOINT TENANTS, as Trustor, in favor of OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be:

3 DOW CT, ALAMEDA, CA

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable

estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $937,992.78 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

DATE: 3/29/2011

POWER DEFAULT SERVICES, INC., Trustee
By: Fidelity National Title Company, its agent 17592 E. 17th Street, Suite 300, Tustin , CA 92780, 714-508-5100

By: _____
    Michael Busby, Authorized Signature


**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.priorityposting.com AUTOMATED SALES INFORMATION PLEASE CALL 714-573-1965**

# Exhibit A-8. 3RD ASSIGNMENT OF DEED OF TRUST

Recording Requested By
ServiceLink

Requested and Prepared by:
AMERICAN HOME MORTGAGE SERVICING,
INC.

When Recorded Mail To:

1525 S. Beltline Road
Coppell, Texas 75019



2011271147     09/23/2011 11:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:           18.00

1      PG

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No.: 0020421368
TS No: 10-12393-6

670701

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**Wells Fargo Bank, N.A., as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-OPT1**, c/o American Home Mortgage Servicing Inc. 1525 S. Beltline Road, Coppell, Texas 75019 all beneficial interest under that certain Deed of Trust dated as of December 13, 2005, executed by AMIE TAN AND ALLEN TAN, WIFE AND HUSBAND AS JOINT TENANTS, as the original grantor(s)/trustor(s), to PREMIER TRUST DEED SERVICES, INC., as the original trustee, to secure obligations in favor of OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION, as the original beneficiary, recorded on December 21, 2005, as Instrument No. 2005540715 of Official Records in the office of the Recorder of Alameda County, California (the "Deed of Trust")

TOGETHER with the obligations secured by the Deed of Trust, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed in whole or in part, the real property described therein.

**SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION**

By: _Tonya H_____     Date: _8/11/2011_____

Its:  Tonya Hopkins
      Assistant Secretary

State of _Florida_____
County of _Duval_____
On _8-11-11_ before me, _C Bates_____
Notary Public, personally appeared _Tonya Hopkins_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____Florida_____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Signature

# Exhibit A-9. 3RD NOTICE OF TRUSTEE'S SALE

When Recorded Mail To:

Recording Requested By
ServiceLink

Fidelity National Title Company
1920 Main Street, Suite 1120
Irvine, CA 92614



2011271149   09/23/2011 11:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:      21.00

2   PGS

Trustee Sale No. 10-12393-6 .       Loan No. 0020421368       Title Order No. 670701

APN 074-1351-049-00

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED December 13, 2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On October 13, 2011, at 12:00 PM, at the Fallon St emergency exit to the Alameda County Courthouse, 1225 Fallon St. Oakland, CA, Power Default Services, Inc., as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on December 21, 2005, as Instrument No. 2005540715 of Official Records in the office of the Recorder of Alameda County, CA , executed by: AMIE TAN AND ALLEN TAN, WIFE AND HUSBAND AS JOINT TENANTS, as Trustor, in favor of OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be:

3 DOW CT, ALAMEDA, CA

The undersigned Trustee disclaims any liability. for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable

estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $960,614.92 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

DATE: 9/13/2011

POWER DEFAULT SERVICES, INC., Trustee
By: Fidelity National Title Company, its agent 1920 Main Street, Suite 1120, Irvine , CA  92614,  949-252-4900

By: _____
    Michael Busby, Authorized Signature


**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.priorityposting.com AUTOMATED SALES INFORMATION PLEASE CALL 714-573-1965**

# Exhibit A-10.    TRUSTEE'S DEED UPON  SALE

"LOAN-AUDITOR.ORG , SAR-NJ-ADT-ALT"

Recording Requested By
WHEN RECORDED MAIL TO     ServiceLink
and
MAIL TAX STATEMENTS TO:

Wells Fargo Bank, N.A., as Trustee for Structured Asset Securities
Corporation, Mortgage Pass-Through Certificates, Series 2006-OPT1
4875 Belfort Road, Suite 130
Jacksonville, FL 32256



2011301629    10/24/2011 10:55 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:         21.00

3    PGS

---

Trustee Sale No. 10-12393-6    Loan No. 0020421368    Title Order No. 670701

## TRUSTEE'S DEED UPON SALE

APN 074-1351-049-00

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

The undersigned grantor declares:
  1) The Grantee herein was the foreclosing beneficiary.
  2) The amount of the unpaid debt together with costs was ................... $990,749.36
  3) The amount paid by the grantee at the trustee sale was .................. $510,000.00
  4) The documentary transfer tax is....................................... $00.00
  5) Said property is in the City of ALAMEDA, Alameda County

POWER DEFAULT SERVICES, INC (herein called Trustee), as the duly appointed Trustee under
the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or
warranty, express or implied, to Wells Fargo Bank, N.A., as Trustee for Structured Asset Securities
Corporation, Mortgage Pass-Through Certificates, Series 2006-OPT1 (herein called Grantee), all of
its right, title and interest in and to that certain property situated in the County of Alameda, State of
California, described as follows:

See Property Description Attached Hereto    see Exhibit A

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of
Trust dated 12/13/2005 and executed by AMIE TAN AND ALLEN TAN, WIFE AND HUSBAND AS
JOINT TENANTS, as Trustor, and recorded on December 21, 2005, as Instrument No. 2005540715
of Official Records in the office of the Recorder of Alameda County, CA, and after fulfillment of the
conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the
Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the
Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and
publication of copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said
Deed of Trust, sold the herein described property at public auction on **October 13, 2011**. Grantee,
being the highest bidder at said sale, became the purchaser of said property for the amount bid
being **$510,000.00** in lawful money of the United States, or by credit bid if the Grantee was the
beneficiary of said Deed of Trust at the time of said Trustee's Sale.

Dated: October 13, 2011

POWER DEFAULT SERVICES, INC as Trustee
by Fidelity National Title, as its agent

**Lisa Rohrbacker, Authorized Signature**

State of California           )ss.
County of Orange         )ss

On October 13, 2011, before me, Ryan M. Bradford,Notary Public,  personally appeared Lisa
Rohrbacker, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

RYAN M. BRADFORD
COMM. # 1807784
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. JULY 28, 2012

Ryan M. Bradford  # 1807784
My Commission Expires 7/28/2012

(Seal)

Order No.: 670701

Customer Reference: 10-12393-6

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **ALAMEDA**, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

**LOT 49, TRACT 6877, FILED APRIL 22, 1997, MAP BOOK 231, PAGE 15, ALAMEDA COUNTY RECORDS, AS CORRECTED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JULY 7, 1997, SERIES NO. 97-167333.**

Trustee's Sale Guarantee
CLTA Guarantee Form No. 22 (05/27/09)